UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA HICKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-CV-01357-NCC |
| | ) | |
| ANNE PRECYNTHE, JOAN | ) | |
| REINKEMEYER, CINDY GRIFFITH, | ) | |
| STAN PAYNE, SCOTT O'KELLY, L.P.C., | ) | |
| LATOYA DUCKWORTH, and | ) | |
| CORIZON, LLC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER
## AND
## PERMANENT INJUNCTION

This matter is before the Court on Plaintiff Jessica Hicklin's Motion for Declaratory Relief and a Permanent Injunction (Doc. 163). The Motion is fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 57). For the following reasons, Plaintiff's Motion will be **GRANTED, in part** and **DENIED, in part**.

### I. Background

On August 22, 2016, Plaintiff Jessica Hicklin ("Ms. Hicklin")[1] filed this action for injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 against Defendant Corizon, LLC[2]

---

[1] The parties have agreed to use female pronouns when addressing Plaintiff Jessica Hicklin.

[2] Defendant was originally improperly named as Corizon Health, Inc.

("Corizon"), the Individual Corizon Defendants,[3,4] and the MDOC Defendants[5] for their alleged deliberate indifference to Ms. Hicklin's serious medical needs (Doc. 19).  Ms. Hicklin specifically alleges that despite knowing that she has gender dysphoria, a serious medical condition, Defendants refused to provide Ms. Hicklin with medically necessary care including hormone therapy, permanent hair removal, and access to "gender-affirming" canteen items (*Id.* at 2-3).  Ms. Hicklin further asserts that Defendants refuse to provide her with hormone therapy, citing a policy or custom of providing hormone therapy only to those transgender inmates who were receiving it prior to incarceration (the so-called "freeze-frame policy") (*Id.*).

On April 4, 2017, Ms. Hicklin filed a Motion for Preliminary Injunction (Doc. 63) requesting a preliminary injunction order that (1) directs Defendants to provide Ms. Hicklin with care that her doctors deem to be medically necessary treatment for gender dysphoria, including but not limited to providing her hormone therapy, access to permanent body hair removal, and access to "gender-affirming" canteen items; and (2) enjoins Defendants from enforcing the unconstitutional policies, customs, or practices that deny inmates with gender dysphoria individualized medically necessary treatment and care, which are contrary to widely accepted standards of care and the recommendations of Ms. Hicklin's treating mental health professionals (Doc. 64 at 5).  After oral argument, on February 9, 2018, the Court granted, in part, and denied, in part, Ms. Hicklin's Motion and entered a preliminary injunction requiring Defendants to

---

[3] At the time, the Individual Corizon Defendants were William McKinney, Glen Babich, T.K. Bredeman, Diana Larkin, Kimberley S. Randolph, Dawn Wade, Stormi Moeller, Shirley Eyman, Elizabeth Atterberry, and Kim Foster.

[4] Corizon and the Individual Corizon Defendants will be collectively referred to as the "Corizon Defendants."

[5] Initially, the MDOC Defendants were George Lombardi, Dwayne Kempker, Ian Wallace, Cindy Griffith, Stan Payne, Scott O'Kelly, and Deloise Williams.

provide Ms. Hicklin with care that her doctors deem to be medically necessary treatment for her gender dysphoria, including hormone therapy, access to permanent body hair removal, and access to "gender-affirming" canteen items (Doc. 145).

The parties subsequently stipulated to an amendment of the case management order and requested a status hearing (Docs. 146-148).  After a status hearing with the parties, the Court entered an amended case management order which afforded Ms. Hicklin additional time to amend her complaint (Doc. 149).  With leave of the Court, Ms. Hicklin filed her First Amended Complaint for Declaratory and Injunctive Relief on February 26, 2018 (Doc. 152).  In relevant part, in her First Amended Complaint, Ms. Hicklin clarifies that she is not only challenging the application of the freeze-frame policy to her but also the constitutionality of the policy on its face (*See* Doc. 152 at 32-33).

On March 30, 2018, Ms. Hicklin filed the current Motion for Declaratory Judgment and Permanent Injunction (Doc. 163).  Ms. Hicklin requests that the Court enter judgment in her favor (1) declaring that Defendants' refusal to provide Ms. Hicklin medically necessary care related to her gender dysphoria violates the Eighth Amendment to the United States Constitution; (2) declaring that Missouri Department of Corrections' policy, practice, custom, or usage of banning the provision of hormone therapy to any transgender inmate who was not receiving such therapy before entering MDOC ("the freeze-frame policy") violates the Eighth Amendment to the United States Constitution, both on its face and as applied to Ms. Hicklin; (3) entering permanent injunctive relief requiring all Defendants to provide Ms. Hicklin with care that her doctors deem medically necessary, including hormone therapy, permanent hair removal, and access to gender-affirming canteen items; (4) entering permanent injunctive relief enjoining the enforcement of the freeze-frame policy by all Defendants; and (5) awarding Ms. Hicklin costs,

expenses, reasonable attorneys' fees, and any other relief the Court deems just and proper (*Id.*). Ms. Hicklin also requests oral argument on the Motion (*Id.*).

On April 4, 2018, the MDOC Defendants[6] filed a response to Ms. Hicklin's motion indicating that they do not oppose Ms. Hicklin's motion or the relief therein requested, "upon the understanding that MDOC Defendants' obligation to provide *medical* care to Ms. Hicklin will be discharged through the Missouri Department of Corrections' medical contractor, Corizon Health, Inc. or its successors" (Doc. 165 at 1) (emphasis in original).  The MDOC Defendants further note that they reserve the right to challenge the reasonableness of attorney's fees accrued by counsel for Plaintiff (*Id.*).  Finally, the MDOC Defendants indicate that they "take no position on Plaintiff's 'Statement of Uncontroverted Facts' or any other material included in Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Declaratory Relief and Permanent Injunction" (*Id.* at 2).

Corizon also responded to Ms. Hicklin's motion indicating that they "do not oppose" Ms. Hicklin's motion or the relief requested therein (Doc. 167 at 1) (emphasis in original).  However, Corizon reserves the right to challenge the reasonableness of any attorney fee application made by counsel for Plaintiff and also objects to paragraphs 6, 10, 11, 15, and 16 of Ms. Hicklin's statement of uncontroverted facts (Doc. 168).  Ms. Hicklin filed a reply to respond to the Corizon Defendants' objections (Doc. 170).

On April 12, 2018, the parties stipulated to the dismissal of the current Individual Corizon Defendants — Defendants William McKinney, M.D., John Deghetto, M.D., Thomas Kevin Bredeman, D.O., Diana Larkin, R.N., Kimberley S. Randolph, R.N., B.S.N., C.C.H.P., Daly Smith, Stormi Moeller, R.N., Ernest Graypel, M.D., Elizabeth Atterberry, and Kim Foster,

---

[6] The MDOC Defendants are currently Anne Precythe, Joan Reinkemeyer, Cindy Griffith, Stan Payne, Scott O'Kelly and Latoya Duckworth.

L.P.C. (Doc. 169) without prejudice.  The Court acknowledged the parties' stipulation and dismissed these defendants on April 19, 2018 (Doc. 175).  Further, as a preliminary matter, the Court will deny Ms. Hicklin's request for oral argument in light of the Defendants responses indicating they do not object to Ms. Hicklin's requested relief.

## II. Relevant Undisputed Facts[7]

Ms. Hicklin is a transgender woman in the custody of the Missouri Department of Corrections ("MDOC") housed at Potosi Correctional Center, a facility for male inmates.  Ms. Hicklin suffers from gender dysphoria (previously known as gender identity disorder or transsexualism), a medical condition characterized by clinically significant distress due to the incongruence between a person's gender identity — their innate sense of their own gender — and the sex they were assigned at birth.  Ms. Hicklin has exhibited symptoms of severe gender dysphoria, including recurring intrusive thoughts of removing her testicles.

### A. Gender Dysphoria and the Standards of Care

Gender dysphoria appears in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition.  Gender dysphoria is an objectively serious medical need.  Individuals with untreated gender dysphoria experience clinically significant depression, anxiety, and mental impairment, and, when left untreated, may also experience additional serious medical problems including suicidality and the compulsion to engage in self-castration and self-harm.

The World Professional Association for Transgender Health's Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People (the "Standards of

---

[7] The facts are taken from Ms. Hicklin's Statement of Uncontroverted Facts (Doc. 164 at 2-7) as well as the Corizon Defendants' Response to Ms. Hicklin's Statement of Uncontroverted Facts (Doc. 168) and Ms. Hicklin's reply addressing the Corizon Defendants' objections (Doc. 170).  Because the parties largely consented to, or did not object to, Ms. Hicklin's Statement of

Care") are "the internationally recognized guidelines for the treatment of persons with gender dysphoria."  Numerous professional medical organizations, including the American Medical Association, the American Psychological Association, the American Psychiatric Association, and the National Commission on Correctional Health Care, endorse the Standards of Care.  The Standards of Care explicitly state that they are equally applicable to patients in prison.  Under the Standards of Care, persons with gender dysphoria should be individually assessed by qualified health care providers and referred for treatment, which can include: (1) living in another gender role that is consistent with one's gender identity; (2) hormone therapy to feminize or masculinize the body; and/or (3) surgery to change primary and/or secondary sex characteristics.  Changes in gender expression, including clothing and grooming that affirm one's gender identity and permanent body hair removal, can alleviate gender dysphoria.  Hormone therapy is an accepted treatment of gender dysphoria, and the denial of hormone therapy for patients for whom such therapy is medically necessary may lead to significant deterioration and impairment in patients, including a high likelihood of depression, suicidal ideation, and surgical self-treatment by auto-castration (removal of the testicles) or autopenectomy (removal of the penis).

Counseling can provide support for some individuals with gender dysphoria, but it is not necessarily a sufficient substitute for medical intervention.  However, providing counseling and/or psychotropic medication to a severely gender dysphoric patient whose condition warrants medical intervention is a departure from the standards of care as recognized by the parties.  Inadequate treatment of this condition, such as treatment not based on an individualized assessment, puts a person at serious risk of psychological and physical harm.

---

Uncontroverted Facts, the Court copies the majority of the facts section verbatim.

**B. The Freeze-Frame Policy**

At all relevant times prior to this Court's February 9, 2018 Preliminary Injunction Order,
MDOC maintained and enforced the freeze-frame policy.  Pursuant to the freeze-frame policy,
decisions regarding whether to initiate hormone therapy for transgender prisoners like Ms.
Hicklin are not based on individualized assessments of each prisoner's medical needs.  Instead,
hormone therapy is automatically denied to any transgender prisoner with gender dysphoria who
was not receiving such therapy before entering MDOC — despite being provided for those who
were receiving such therapy prior to entering MDOC.  The Standards of Care state that a freeze-
frame approach is not considered appropriate care and warn that "the consequences of . . . lack of
initiation of hormone therapy when medically necessary include a high likelihood of negative
outcomes such as surgical self-treatment by auto-castration, depressed mood, dysphoria, and/or
suicidality."

**C. Ms. Hicklin's Treatment for Gender Dysphoria**

Corizon psychiatrists Dr. Meredith Throop ("Dr. Throop") and Dr. Evelynn Stephens
("Dr. Stephens") diagnosed Ms. Hicklin with gender dysphoria and prescribed medically
necessary hormone therapy for her in 2015.  However, for almost three years, Defendants did not
provide hormone therapy for Ms. Hicklin due to the freeze-frame policy.  Also, despite medical
professional recommendations to the contrary, Defendants did not provide Ms. Hicklin access to
medically necessary permanent body hair removal and gender-affirming canteen items (*i.e.*,
canteen items made available to other female inmates).

Both Dr. Throop and Dr. Stephens have noted that not treating Ms. Hicklin in accordance
with the Standards of Care put her at risk of serious harm.  Medical records show that lack of
appropriate treatment for gender dysphoria caused Ms. Hicklin to experience serious
psychological and physical symptoms (including panic attacks, anxiety, racing heartbeat,

shortness of breath, sleep disturbance, lack of appetite, headaches, and excessive sweating) and put her at substantial risk of self-harm, including auto-castration and suicidal thoughts or acts. The documents and testimony produced in discovery to the Plaintiff do not support denying medically necessary gender dysphoria treatment based on cost, safety, or any other reason.

### III.  Analysis[8]

The availability of declaratory relief is a matter of federal law, governed by the Declaratory Judgment Act ("the Act").  The Act provides that in a "case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.  The Act "granted the federal courts discretion to make a declaration of rights; it did not impose a duty to do so." *Alsager v. Dist. Court of Polk Cty.*, 518 F.2d 1161, 1163 (8th Cir. 1975) (internal quotation marks omitted).  "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Id.* at 1163-64 (8th Cir.) (internal citations omitted).

To succeed on a request for a permanent injunction, Ms. Hicklin must establish: (1) actual success on the merits; (2) threat of irreparable harm; (3) the harm to the movant outweighs any possible harm to others; and (4) an injunction serves the public interest.  *See Bank One, Utah v. Guttau*, 190 F.3d 844, 847 (8th Cir. 1999) (citing *Dataphase Systems, Inc. v. C.L. Systems,*

---

[8] While the Court expanded on the legal standard, in light of the consensus of the parties, the analysis and requested relief are taken largely verbatim from Ms. Hicklin's proposed order (Doc. 164-16).

*Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).  These factors are identical to those required for preliminary injunction, except that success on the merits must be actual instead of likely.  *Id.*

In support of her previous Motion for Preliminary Injunction (Doc. 63), and the currently pending Motion for Declaratory Relief and a Permanent Injunction (Doc. 163), Ms. Hicklin has presented evidence to show that Defendants violated the Eighth Amendment by knowingly disregarding Ms. Hicklin's serious medical needs and through the enforcement of the freeze-frame policy.

The Court finds that Plaintiff has presented evidence to show that the freeze-frame policy at issue fails by its very nature to account for the individual medical needs of transgender prisoners who suffer from gender dysphoria, and therefore violates the Eighth Amendment both on its face and as applied to Ms. Hicklin.

The Court finds that providing the declaratory relief requested would both settle the legal issues and provide relief from the uncertainty and controversy surrounding this issue within MDOC.

The Court finds that Plaintiff has presented evidence to show that she has suffered irreparable injury as a result of Defendants' failure to provide her with medically necessary treatment for her gender dysphoria and their application of the freeze-frame policy and will again suffer such injury if the requested relief is not granted.

The Court finds that Plaintiff has demonstrated actual success on the merits of her claims of violation of her Eighth Amendment rights due to Defendants' denial of medically necessary treatment for her gender dysphoria and application of the freeze-frame policy generally and to Ms. Hicklin specifically.  The Court further finds that the balance of harms favors the Plaintiff, as she will suffer irreparable harm if the requested relief is not granted while Defendants would not be harmed if the requested relief is ordered.  Given the deprivation of constitutional rights

9

that Plaintiff has suffered and will suffer if Defendants withhold medically necessary gender dysphoria treatment from her or continue to enforce the freeze-frame policy, the public interest favors entry of such an order.

### IV.  Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Jessica Hicklin's Motion for Declaratory Relief and a Permanent Injunction (Doc. 163) is **GRANTED, in part** and **DENIED, in part**.

**IT IS FURTHER ORDERED** that a **PERMANENT INJUNCTION** is entered in this case, as follows:

(1) Defendants' failure to provide Ms. Hicklin medically necessary care related to her gender dysphoria violates the Eighth Amendment to the United States Constitution;

(2) MDOC's policy, practice, custom, or usage of banning the provision of hormone therapy to any transgender inmate who was not receiving such therapy before entering MDOC ("the freeze-frame policy") violates the Eighth Amendment to the United States Constitution, both on its face and as applied to Ms. Hicklin;

(3) For as long as Ms. Hicklin remains in the custody of MDOC, Defendants shall provide Ms. Hicklin with care that her doctors deem medically necessary treatment for her gender dysphoria, including hormone therapy, permanent hair removal, and access to gender-affirming canteen items;

(4) Defendants are permanently enjoined from enforcing the freeze-frame policy; and

(5) Defendants shall pay Ms. Hicklin's costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws.

**IT IS FURTHER ORDERED** that Plaintiff Jessica Hicklin shall file documentation in support of an award of reasonable attorney's fees and costs incurred in this action within

fourteen (14) days of the date of this order.  Defendants may thereafter file responses to

Plaintiff's request within fourteen (14) days of Ms. Hicklin's filing and Ms. Hicklin shall file a

reply, if she chooses, no later than seven (7) days thereafter.

      **IT IS FURTHER ORDERED** that, in light of the Court's decision herein, any other

remaining pending motions (Docs. 126, 131, 141, 142) are **DENIED, without prejudice, as**

**moot**.

      Dated this 22nd day of May, 2018.

            __ /s/ Noelle C. Collins_____
            NOELLE C. COLLINS
            UNITED STATES MAGISTRATE JUDGE