UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JESSICA HICKLIN, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:16-cv-01357-NCC |
| | ) |
| ANNE PRECYTHE, *et. al.*, | ) |
| | ) |
|    Defendants. | ) |

**MDOC DEFENDANTS' SUGGESTIONS IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE, OR ALTERNATIVELY, TO CLARIFY, THE PERMANENT INJUNCTION AND CROSS-MOTION FOR TERMINATION OF PROSPECTIVE RELIEF**

Defendants Anne Precythe, Joan Reinkemeyer, Latoya Duckworth, Scott O'Kelly, Ian Wallace, Deloise Williams, Cindy Griffith and Stan Payne ("MDOC Defendants"), respectfully submit the following suggestions in opposition to Plaintiff's Motion to Enforce, or Alternatively, to Clarify the Permanent Injunction. In doing so, MDOC Defendants ask this Court to enter an order clarifying that pre-surgical consultation and gender confirmation surgery are not within the scope of the Court's Memorandum and Order and Permanent Injunction ("Permanent Injunction") (Doc. 176).

Furthermore, pursuant to 18 U.S.C. 3626(b)(2), MDOC Defendants move this Court to terminate the prospective relief granted in the Permanent Injunction. And MDOC Defendants respectfully request oral argument on

1

Plaintiff's Motion and this Opposition, as well as MDOC's Cross-Motion for Termination of Prospective Relief.

## FACTUAL AND PROCEDURAL BACKGROUND

As stated in this Court's Permanent Injunction, Plaintiff Jessica Hicklin brought a complaint that asserted Defendants refused to provide her with medically necessary care and that specifically alleged a concern for "hormone therapy, permanent hair removal, and access to 'gender-affirming' canteen items." (Doc. 176 at 2.). Indeed, Plaintiff's First Amended Complaint provided a detailed chronology of the complaints and grievances she submitted to Defendants, all of which focused entirely on hormone therapy, permanent body hair removal, access to gender-affirming canteen items, or a combination of the three. (Doc. 152 at ¶¶ 67, 71-72, 74-93, 96, 108-113).

Plaintiff's Count I was specifically based on the assertion that Defendants placed her at a risk of harm while knowing that hormone therapy and social role transition (such as hair removal and access to gender-affirming products) were medically necessary. (Doc. 152 at 30-31). In Count II, Plaintiff contested Defendants' "freeze-frame" policy, arguing that it wrongfully denied hormone therapy to inmates who were not receiving such therapy before entering MDOC. (Doc. 152 at 31-32).

Based on these claims, Plaintiff sought and obtained a preliminary injunction. At the hearing on the preliminary injunction, counsel for Plaintiff

confirmed multiple times that the medical care Plaintiff sought was *only* hormone therapy, permanent body hair removal, and gender-affirming canteen items. First, Plaintiff confirmed for the Court that "there are three generalized categories." (Doc. 83 at 13:8-11). Then, the Court clarified, "So it's all three or none -- in other words, it's a package request of all three categories," and Plaintiff's counsel responded, "Right. . . . [T]his particular person needs certain specific things, and those things are what we're asking for today." (*Id.* at 13:17-25).

Following the hearing, the Court issued its Memorandum and Order granting a preliminary injunction in part (Doc. 145). In the Preliminary Injunction Order, the Court expressly found that "*Plaintiff has not asked for surgery.*" (*Id.* at 24) (emphasis added). Had Plaintiff sought more or different medical care, especially pre-surgical consultation or gender-affirming surgery, there would have been no need to clarify—on the record and in the Court's Order—that the Plaintiff's request and relief were only three things.

Within this same context, Plaintiff later sought a permanent injunction to require Defendants to provide her with medically necessary care and, as recognized in the Permanent Injunction, Plaintiff once again expressed her specific concern for hormone therapy, permanent hair removal, and access to gender-affirming canteen items. (Doc. 176 at 3). Indeed, Plaintiff's request for permanent injunction contains expressly-stated concerns regarding the need

3

for hormone therapy, hair removal, and gender-affirming canteen items, which is consistent with the concerns stated in her First Amended Complaint and the Preliminary Injunction. (Doc. 164 at 1, 5, 6, 10, 11, 12, 14, 15). There is no similar concern or request for pre-surgical consultation or gender-affirming surgery.

Plaintiff then sought permanent injunctive relief. In response, and based on the understanding of the concerns at issue and the representations of the Plaintiff and Court's Order, the MDOC Defendants stated that they did not oppose Plaintiff's motion for permanent injunctive relief, upon the understanding that the obligation to provide medical care be carried out through MDOC's medical contractor. (Doc. 165 at 1).

The Court entered the Permanent Injunction in Plaintiff's favor, which, like Plaintiff's Amended Complaint and motions for preliminary and permanent injunction, also expressed the specific concerns for hormone therapy, permanent hair removal, and access to gender-affirming canteen items. (Doc. 176 at 10). The Court also stated that it reached its decision based on "the consensus of the parties." (*Id.* at 8).

Now, almost three years after the Permanent Injunction, Plaintiff requests that the MDOC Defendants provide additional medical care that includes a pre-surgical consultation and gender confirmation surgery. While a pre-surgical consultation has been previously scheduled but ultimately

4

cancelled, the parties disagree whether such a consultation and subsequent gender confirmation surgery are within the scope of the Permanent Injunction.

## ANALYSIS

### *Legal Standard*

MDOC Defendants agree with Plaintiff that this Court "has the same 'wide discretion' to clarify or define the original injunction as it has on consideration of a motion to vacate or modify." *Flavor Corp. of Am. V. Kemin Indus., Inc.*, 503 F.2d 729, 733 (8th Cir. 1974). Moreover, the Eighth Circuit consistently defers to the district courts' interpretations of their own orders. *See Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 947 (8th Cir. 2012); *Brachtel v. Apfel,* 132 F.3d 417, 420 (8th Cir. 1997); *Steahr v. Apfel*, 151 F.3d 1124, 1126 (8th Cir. 1998). This deference is given because the district court is in the best position to know the intent of its orders. *See Brachtel*, 132 F.3d at 420 (deferring to the district court's construction of its own order because that court "knew its original intent"); *Steahr*, 151 F.3d at 1126 (same). This deference does not permit, however, the Plaintiff in this case to seek relief that she specifically represented to the Court was not requested, and against the express finding of the Court that it was not requested or at issue.

**I.     This litigation, and thus the Permanent Injunction, has only ever pertained to Plaintiff's requests for hormone therapy, body hair removal, and gender-affirming canteen items, and it has never considered a pre-surgical consultation and gender confirmation surgery.**

Plaintiff brought this lawsuit to remedy MDOC Defendants' particular failure to provide her with the hormone therapy, body hair removal, and access to gender-affirming canteen items that she had requested for her medical care. Plaintiff's Amended Complaint sought redress for these particular failures. Plaintiff's requests for a preliminary and then permanent injunction sought redress for only these particular items. Before filing this lawsuit and throughout its litigation, Plaintiff never requested anything other than hormone therapy, permanent body hair removal, or access to gender-affirming canteen items. Recognizing the limited request for relief, MDOC Defendants took the extraordinary step of not opposing permanent injunctive relief. Consequently, in stating that they did not oppose Plaintiff's motion for permanent injunctive relief, MDOC Defendants conceded to only the medical care requested and deemed necessary at that time: hormone therapy, permanent body hair removal, and access to gender-affirming canteen items.

To be clear, the Preliminary Injunction expressly ruled out surgery for Plaintiff. The Court specifically held that Plaintiff was not seeking surgical treatment from MDOC Defendants, stating that "Plaintiff has not asked for surgery." (Doc. 145 at 24). The Court held this as part of distinguishing the

6

litigation from MDOC Defendants' position that "[t]here is no constitutional right to sex-reassignment therapy." (*Id.*). In fact, Plaintiff now admits that gender confirmation surgery was not deemed medically necessary at the time of the Permanent Injunction (and thus neither was a pre-surgical consultation). (Doc. 205-1 at 5-6). Moreover, at the preliminary injunction hearing, Plaintiff confirmed that there were only three categories at issue and that her request was "a package request of all three categories." (Doc. 83 at 13:8-25). There was never a consensus between the parties regarding gender confirmation surgery or a pre-surgical consultation. These medical issues were never before the Court—not at the preliminary injunction stage and not in the Permanent Injunction stage.

Indeed, the Permanent Injunction, reached "in light of the consensus of the parties," did not encompass providing Plaintiff gender confirmation surgery and a pre-surgical consultation. Plaintiff admits that surgery was not medically necessary at the time of the Permanent Injunction. The Permanent Injunction does not pertain to any medical care other than what was necessary and litigated at that time: hormone therapy, permanent hair removal, and access to gender-affirming canteen items. And it is undisputed that the MDOC Defendants have provided those to Plaintiff. But pre-surgical consultation and gender confirmation surgery were neither litigated nor ordered within the scope of the Permanent Injunction.

7

## II. The Permanent Injunction does not include the required need-narrowness-intrusiveness findings, further evidencing the Permanent Injunction's limited application to only hormone therapy, hair removal, and canteen items.

"Prospective relief in *any civil action with respect to prison conditions* shall extend *no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.*" 18 U.S.C. § 3626(a)(1)(A) (emphasis added). No court shall grant or approve prospective relief "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.*

18 U.S.C. § 3626(g)(2) defines a "civil action with respect to prison conditions" to include "the effects of actions by government officials on the lives of persons confined in prison." The denial of medical treatment, as Plaintiff has alleged in this litigation, "clearly represents a condition of confinement." *Peoples v. Corizon Health, Inc.*, No. 2:11-CV-01189-NKL, 2012 WL 1854730, at *2 n.2 (W.D. Mo. May 21, 2012) (citing *Witzke v. Femal*, 376 F.3d 744, 751 (7th Cir. 2004)). Accordingly, the Permanent Injunction must conform with 18 U.S.C. § 3626.

The Permanent Injunction, however, does not contain any of the required need-narrowness-intrusiveness findings. It does not find that providing hormone therapy, permanent body hair removal, and access to gender-

8

affirming canteen items was relief that is narrowly drawn, extends no further than necessary, and is the least intrusive means necessary.

More importantly, the Permanent Injunction does not discuss a pre-surgical consultation or a subsequent surgery, and likewise, it does not make any findings that such additional relief would be narrowly drawn, would extend no further than necessary to correct the violation of a Federal right, or would be the least intrusive means necessary to correct any such violation.

MDOC Defendants were accepting of—and conceded to—prospective relief concerning hormone therapy, body hair removal, and canteen items. The absence of the required § 3626 need-narrowness-intrusiveness findings was inconsequential at the time because MDOC Defendants had no reason to challenge the limited relief it had conceded to Plaintiff (and continues to provide). But the Permanent Injunction's lack of the required findings further demonstrates that its scope was limited to the three categories of care the parties had discussed at that time. The scope of the Permanent Injunction did not include gender confirmation surgery or a pre-surgical consultation, which would require the need-narrowness-intrusiveness findings.

### III. MDOC Defendants move to terminate the Permanent Injunction pursuant to 18 U.S.C. § 3626(b)(2) because it does not make any findings that the relief is narrowly drawn, extends no further than necessary, and is the least intrusive means.

Pursuant to 18 U.S.C. § 3626(b)(2), in a civil action such as this concerning prison conditions, a defendant is entitled to:

> the *immediate termination* of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(b)(2) (emphasis added).

As mentioned, the Permanent Injunction does not contain any findings that the relief granted is narrowly drawn, extends no further than necessary, or is the least intrusive means necessary to correct the violation. Nor were those matters litigated, which they must be in order to produce the required findings.

In light of the now disputed scope of the Permanent Injunction, and Plaintiff's attempt to expand its scope beyond its original application and intention without required findings, MDOC Defendants must move for the Permanent Injunction to be terminated. As explained above, MDOC Defendants accepted and conceded prospective relief concerning only hormone therapy, body hair removal, and canteen items. MDOC Defendants continue to provide this specified care and have so far had no reason to seek to terminate

10

the Permanent Injunction as to those means of care. But as is now evident, Plaintiff and MDOC Defendants do not agree on the scope of the Permanent Injunction and do not agree on what relief must be provided absent the support of the required § 3626 findings.

MDOC Defendants will continue to provide the specified care of hormone therapy, permanent body hair removal, and access to gender-affirming canteen items after termination of Permanent Injunction relief. But relief beyond that to which MDOC Defendants conceded must be supported by the required written findings following full litigation of the issue. Without having made the required 18 U.S.C. §3626 findings regarding Plaintiff's newly-requested gender confirmation surgery and pre-surgical consultation, the Court cannot properly require the MDOC Defendants to provide that care.

Accordingly, under 18 U.S.C. § 3626(b)(2), MDOC Defendants move this Court to terminate the prospective relief granted in the Permanent Injunction because it lacks findings that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Enforce, or Alternatively, to Clarify the Permanent Injunction should be denied. The Court should issue an order clarifying that pre-surgical consultation and gender confirmation

surgery are not within the scope of the Permanent Injunction. In addition, the Court should terminate the Permanent Injunction.

Respectfully submitted,

ERIC S. SCHMITT
Attorney General

 /s/ *Jeremiah J. Morgan*
Jeremiah J. Morgan, #50387
Deputy Attorney General - Civil
P.O. Box 899
Jefferson City, MO  65102-0899
Telephone No.: (573) 751-1800
Facsimile No: (573) 751-0774
E-mail: Jeremiah.Morgan@ago.mo.gov

Robert J. Schaeffer, #69324MO
Assistant Attorney General
149 Park Central Square
Suite 1017
Springfield, MO  65806
Telephone No.: (417) 895-6567
Facsimile No: (417) 895-6382
E-mail: Robert.Schaeffer@ago.mo.gov

Case: 4:16-cv-01357-NCC   Doc. #:  206   Filed: 06/10/21   Page: 13 of 13 PageID #: 2618

## **CERTIFICATE OF SERVICE**

I certify that on this 10th day of June, 2021, the foregoing was filed and served through the Court's CM/ECF system upon all counsel of record.

                                      /s/ *Robert J. Schaeffer*
                                      Robert J. Schaeffer