UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JESSICA HICKLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-cv-01357-NCC |
| | ) |
| ANNE PRECYTHE, *et. al.*, | ) |
| | ) |
| Defendants. | ) |

**SUGGESTIONS IN SUPPORT OF MDOC'S
<u>MOTION TO TERMINATE PROSPECTIVE RELIEF</u>**

Defendants Anne Precythe, Joan Reinkemeyer, Latoya Duckworth, Scott O'Kelly, Ian Wallace, Deloise Williams, Cindy Griffith, and Stan Payne ("MDOC Defendants"), submit the following Suggestions in Support of their Motion to Terminate Prospective Relief concerning the Court's Memorandum and Order and Permanent Injunction ("Permanent Injunction") (Doc. 176).

**FACTUAL AND PROCEDURAL BACKGROUND**

This case began with Plaintiff Jessica Hicklin's complaint that asserted MDOC Defendants refused to provide her with medically necessary care in the form of "hormone therapy, permanent hair removal, and access to 'gender-affirming' canteen items." (Doc. 176 at 2.). Count I was specifically based on the assertion that MDOC Defendants placed her at a risk of harm while knowing that hormone therapy and social role transition (such as hair removal

1

and access to gender-affirming products) were medically necessary. (Doc. 152 at 30-31). In Count II, Plaintiff contested MDOC Defendants' "freeze-frame" policy, arguing that it wrongfully denied hormone therapy to inmates who were not receiving such therapy before entering prison. (Doc. 152 at 31-32).

Based on these claims, Plaintiff sought a preliminary injunction. At the preliminary injunction hearing, counsel for Plaintiff confirmed multiple times that the medical care Plaintiff sought was *only* hormone therapy, permanent body hair removal, and gender-affirming canteen items. Plaintiff confirmed for the Court that "there are three generalized categories." (Doc. 83 at 13:8-11). Then, the Court clarified, "So it's all three or none -- in other words, it's a package request of all three categories," and Plaintiff's counsel responded, "Right. . . . [T]his particular person needs certain specific things, and those things are what we're asking for today." (*Id.* at 13:17-25).

Following the hearing, the Court issued its Memorandum and Order granting a preliminary injunction in part. (Doc. 145). In the Order, the Court expressly found – based on Plaintiff's affirmative representations and claims – that "*Plaintiff has not asked for surgery.*" (*Id.* at 24) (emphasis added). Had Plaintiff sought more or different medical care, especially pre-surgical consultation or gender-affirming surgery, there would have been no need to clarify—on the record and in the Court's Order—that the Plaintiff's request and relief were only three things.

Within this same context, Plaintiff later sought a permanent injunction to require Defendants to provide her with medically necessary care, once again, in the form of hormone therapy, permanent hair removal, and access to gender-affirming canteen items. (Doc. 176 at 3). The claims and evidence of Plaintiff's medically necessary care had not changed since the preliminary injunction. Indeed, Plaintiff's request for permanent injunction contained expressly-stated concerns regarding the need only for hormone therapy, permanent body hair removal, and gender-affirming canteen items, which is consistent with the claims stated in her Complaint and the preliminary injunction. (Doc. 164 at 1, 5, 6, 10, 11, 12, 14, 15). There is no similar claim or request for pre-surgical consultation or gender-affirming surgery.

In response, and based on the understanding of the claims at issue and the representations of the Plaintiff, MDOC Defendants stated that they did not oppose Plaintiff's motion for permanent injunctive relief, upon the understanding that the obligation to provide medical care be carried out through MDOC's medical contractor. (Doc. 165 at 1). The Court entered the Permanent Injunction, which, like Plaintiff's Amended Complaint and motions for preliminary and permanent injunction, also expressed the specific claim for hormone therapy, permanent body hair removal, and access to gender-affirming canteen items. (Doc. 176 at 10). The Court also stated that it reached its decision based on "the consensus of the parties." (*Id.* at 8).

The Court entered the Permanent Injunction on May 22, 2018. (Doc. 176). The parties brought their current disagreement regarding the scope of the Permanent Injunction to the Court's attention in May 2021. The Court ordered briefing from the parties to address "whether, if deemed medically necessary, a presurgical consult and subsequent sex reassignment surgery would be covered by the scope of the Permanent Injunction issued in this case." (Doc. 199 at 2). In reviewing the now disputed scope of the Permanent Injunction, it was clear to MDOC Defendants that the Permanent Injunction does not include specific findings required by 18 U.S.C. § 3626, and it is therefore subject to immediate termination. MDOC Defendants raised this issue to the Court along with their requested briefing. (Doc. 206).

The Court held a hearing on the parties' briefing on June 23, 2021. Rather than address the termination issue at that hearing, the Court provided leave for MDOC Defendants to re-file a new motion for termination, which is now before the Court.

## ANALYSIS

### *Legal Standard*

The Prison Litigation Reform Act ("PLRA") "establishes standards for the entry and termination of prospective relief in civil actions challenging conditions at prison facilities." *Miller v. French*, 530 U.S. 327, 333 (2000). "The same criteria apply to existing injunctions, and a defendant or intervenor may

4

move to terminate prospective relief that does not meet [the PLRA] standard." *Id.* (citing 18 U.S.C. § 3626(b)(2)). Accordingly, the Court's Permanent Injunction must conform with the PLRA, as set forth in 18 U.S.C. § 3626.[1]

Under the PLRA, "[i]n any civil action with respect to prison conditions in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or intervener--(i) 2 years after the date the court granted or approved the prospective relief." 18 U.S.C. § 3626(b)(1)(A)(i).

18 U.S.C. § 3626 (a)(1)(A) further provides, "Prospective relief in any civil action with respect to prison conditions shall extend *no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs*." (Emphasis added). Furthermore, no court shall grant or approve prospective relief "unless the court finds that such relief is [1] *narrowly drawn*, [2] *extends no further than necessary to correct the violation* of the Federal right, and [3] is the *least intrusive means necessary* to correct the violation of the Federal right." *Id.* (emphasis added).

Pursuant to 18 U.S.C. § 3626(b)(2), defendant is entitled to:

the *immediate termination* of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to

---

[1] Plaintiff has not contested that the 18 U.S.C. § 3626 applies to the Permanent Injunction. Indeed, 18 U.S.C. § 3626(g)(2) defines a "civil action with respect to prison conditions" to include "the effects of actions by government officials on the lives of persons confined in prison." The denial of medical treatment, as Plaintiff has alleged in this litigation, "clearly represents a condition of confinement." *Peoples v. Corizon Health, Inc.*, No. 2:11-CV-01189-NKL, 2012 WL 1854730, at *2 n.2 (W.D. Mo. May 21, 2012) (citing *Witzke v. Femal*, 376 F.3d 744, 751 (7th Cir. 2004)).

correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(b)(2) (emphasis added). "In deciding whether these multiple limitations have been complied with, it is necessary to identify with precision what is the 'violation of the Federal right of a particular plaintiff or plaintiffs' that has been alleged." *Brown v. Plata*, 563 U.S. 493, 550–51 (2011) (Scalia, J., dissenting).

### I. MDOC Defendants are entitled to termination of the Permanent Injunction because it has been two years since this Court granted the prospective relief therein.

"Section 3626(b)(1) was enacted . . . to authorize periodic new motions to terminate prospective relief that was initially based upon the proper findings." *Tyler v. Murphy*, 135 F.3d 594, 597 (8th Cir. 1998). As recognized in *Tyler*, legislative history underscores the importance of termination after two years: "[The statute] provides that any party can seek to have a court decree ended after 2 years . . . . As a result, no longer will prison administration be turned over to Federal judges for the indefinite future . . . ." 141 Cong. Rec. S14419 (daily ed. Sept. 27, 1995) (statement of Sen. Abraham).

Two years after the date the Court granted the Permanent Injunction expired on May 22, 2020. As such, the Permanent Injunction is terminable under 18 U.S.C. § 3626(b)(1)(A)(i). This termination pursuant to § 3626(b)(1)(A)(i) occurs by operation of time, regardless of whether the

6

Permanent Injunction is based on the proper findings. MDOC Defendants, therefore, seek to terminate the Permanent Injunction as contemplated by law.

**II. MDOC Defendants are also entitled to immediate termination of the Permanent Injunction because the relief therein was granted in the absence of findings required by 18 U.S.C. § 3626.**

Plaintiff brought this lawsuit to remedy MDOC Defendants' alleged failure to provide her with hormone therapy, permanent body hair removal, and access to gender-affirming canteen items that she requested for her medical care. Plaintiff's Complaint and her requests for preliminary and then permanent injunction sought redress for only these particular items.

Although Plaintiff was successful in her requests for preliminary and then permanent relief, the Permanent Injunction does not contain any of the required findings that the relief is narrowly drawn, extends no further than necessary, and is the least intrusive means necessary. More importantly, the Permanent Injunction does not discuss a pre-surgical consultation or a subsequent surgery, and likewise, it does not make any findings that such additional relief would be narrowly drawn, would extend no further than necessary to correct the violation of a Federal right, or would be the least intrusive means necessary to correct any such violation.

Take the required narrowness finding for example. "Narrow tailoring requires a fit between the remedy's ends and the means chosen to accomplish those ends." *Brown v. Plata,* 563 U.S. 493, 531 (2011). The Permanent

7

Injunction does not address, in any way, whether the remedies of pre-surgical consult and subsequent gender confirmation surgery are means narrowly fit to accomplish the ends of treating Plaintiff's gender dysphoria. The Court only considered the means that were put before it—hormone therapy, permanent hair removal, and access to gender-affirming canteen items.

To be clear, the Preliminary Injunction expressly ruled out surgery as an issue then before the Court. The Court specifically held that Plaintiff was not seeking surgical treatment from MDOC Defendants, stating that "Plaintiff has not asked for surgery." (Doc. 145 at 24). In fact, Plaintiff has now admitted in its pleadings and during the motion hearing that neither a pre-surgical consultation nor gender confirmation surgery were medically necessary at the time of the Permanent Injunction. (*See* Doc. 205-1 at 5-6; Doc. 214, Mot. Hr'g Tr. at 24:4-16). Thus, it is logically impossible for the Permanent Injunction to have included the required § 3626 findings for this relief.

In fact, there is no evidence in the record before the Court to support any such findings. In the Permanent Injunction, the Court specifically referenced evidence supporting the preliminary injunction (Doc. 176 at 9)—where it was clear *"Plaintiff has not asked for surgery."* (Doc 145 at 24). Neither the Plaintiff, nor the Court, made any reference to evidence Plaintiff was attempting to use to prove the necessity of surgery consultation or gender affirming surgery. This is because there was none. All of Plaintiff's evidence in that regard (which is

8

not properly before the Court), all post-dates the Permanent Injunction. (Doc. 205-1 at 2). This again stems from Plaintiff's representations to the Court (and Defendants) that surgery was not part of the requested remedies—representations Plaintiff has re-affirmed to the Court. As such, it is not possible the evidence or findings could have supported a pre-surgical consultation and gender confirmation surgery conforming to 18 U.S.C. § 3626.

In light of the now disputed scope of the Permanent Injunction, and Plaintiff's attempt to expand its scope beyond its original application without required findings, MDOC Defendants must move for the Permanent Injunction to be immediately terminated pursuant to § 3626(b)(2). As explained previously, MDOC Defendants accepted and conceded prospective relief concerning only hormone therapy, body hair removal, and canteen items. MDOC Defendants continue to provide this specified care. But as is now evident, Plaintiff and MDOC Defendants do not agree on the scope of the Permanent Injunction and do not agree on what relief must be provided absent the support of the required § 3626 findings.

MDOC Defendants will continue to provide the specified care of hormone therapy, permanent body hair removal, and access to gender-affirming canteen items after termination of Permanent Injunction relief. But relief beyond that to which MDOC Defendants conceded must be supported by the required written findings following full litigation of the issue. Without having made the

required 18 U.S.C. § 3626 findings, the Court must immediately terminate the Permanent Injunction, especially in light of the lack of findings (and evidence) to support Plaintiff's newly-requested relief. Indeed, 18 U.S.C. § 3626 makes it mandatory – defendant "*shall* be entitled to the immediate termination of any prospective relief." 18 U.S.C. § 3626(b)(2) (emphasis added); *see also id.* § 3626(b)(1)(A) ("[S]uch relief *shall* be terminable ….").

### III. 18 U.S.C. § 3626(b)(3) does not bar termination of the Permanent Injunction because the Permanent Injunction does not include the requisite written findings based on the record.

Plaintiff's reliance on 18 U.S.C. § 3626(b)(3) is misplaced. This subsection provides in full:

> Prospective relief shall not terminate *if the court makes written findings based on the record* that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

(Emphasis added). "'Written findings based on the record' are explicitly required to avoid termination of the relief." *Hines v. Anderson*, 547 F.3d 915, 919 (8th Cir. 2008) (quoting § 3626(b)(3)). Thus, applying § 3626(b)(3) requires "written findings based on the record" regarding the violation Plaintiff now alleges—a pre-surgical consultation and gender confirmation surgery. Such findings, however, are not present in the Permanent Injunction because those

10

matters were neither litigated nor ordered within the scope of the Permanent Injunction (as MDOC Defendants have explained).

While Plaintiff attempts to invoke § 3626(b)(3), that section of the statute, in reality, demonstrates the need for termination of the Permanent Injunction because there are no written findings based on the record. And specific to § 3626(b)(3), there also are no written findings in the Permanent Injunction—and certainly none based on the record—that there is a current and ongoing violation of a Federal right stemming from the denial of a pre-surgical consultation and gender confirmation surgery. Absent such written findings based on the record, the Permanent Injunction does not survive termination.

Furthermore, Plaintiff has pointed to *Gilmore v. California*, 220 F.3d 987, 1007 (9th Cir. 2000) to claim that § 3626(b)(3) shifts the burden to MDOC Defendants to prove the absence of a current and ongoing violation. This is not true, and *Gilmore* is not good law. To start, *Gilmore* is not consistent with decisions from other courts. *See, e.g.*, *Guajardo v. Texas Dep't of Crim. Just.*, 363 F.3d 392, 395–96 (5th Cir. 2004) ("We agree with the great majority of courts to address this issue: a plain reading of the PLRA, including its structure, imposes the burden [to demonstrate a current and ongoing violation] on the prisoners."); *Laaman v. Warden, N.H. State Prison*, 238 F.3d 14, 20 (1st Cir. 2001) (holding, to "prevent termination," burden is on plaintiffs to show

11

current and ongoing violations); *Benjamin v. Jacobson*, 172 F.3d 144, 166 (2d Cir. 1999) ("[T]he district court must allow the plaintiffs an opportunity to show current and ongoing violations of their federal rights.").

Moreover, two years after *Gilmore*, the Ninth Circuit placed the burden on the prisoner-plaintiffs in a PLRA action seeking to extend a consent decree, which constituted PLRA prospective relief. *Hallett v. Morgan*, 296 F.3d 732, 741-45 (9th Cir. 2004). The court held that the plaintiffs, in order to avoid expiration of the consent decree, must prove ongoing constitutional violations. *Id.* The Fifth Circuit, in *Guajardo*, describes the conflicting Ninth Circuit decisions best: "This reasoning [from *Hallett*]—placing the burden of proof under 18 U.S.C. § 3626(b)(3) on the party opposing termination of a consent decree—is in obvious tension with the earlier reasoning in *Gilmore*." *Guajardo*, 363 F.3d at 395.

In short, MDOC Defendants' burden stops at § 3626(b)(1)(A)(i), as "relief *shall* be terminable upon the motion of any party . . . 2 years after the date the court granted or approved the prospective relief." (Emphasis added). Likewise, MDOC Defendants' burden stops at § 3626(b)(2), as they are "*entitled* to the immediate termination of prospective relief" in the absence of the required findings. (Emphasis added). Accordingly, MDOC Defendants move this Court to terminate the prospective relief granted in the Permanent Injunction under 18 U.S.C. § 3626(b)(1)(A)(i) because it is two years after the date the Court

12

granted the prospective relief, and under 18 U.S.C. § 3626(b)(2) because the Permanent Injunction lacks written findings that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

## CONCLUSION

For the foregoing reasons, the Court should terminate the Permanent Injunction.

Respectfully submitted,

**ERIC S. SCHMITT**
Attorney General

/s/ *Jeremiah J. Morgan*
Jeremiah J. Morgan, #50387
Deputy Attorney General - Civil
P.O. Box 899
Jefferson City, MO  65102-0899
Telephone No.: (573) 751-1800
Facsimile No: (573) 751-0774
E-mail: Jeremiah.Morgan@ago.mo.gov

Robert J. Schaeffer, #69324MO
Assistant Attorney General
149 Park Central Square
Suite 1017
Springfield, MO  65806
Telephone No.: (417) 895-6567
Facsimile No: (417) 895-6382
E-mail: Robert.Schaeffer@ago.mo.gov

**Attorneys for Defendants**

## **CERTIFICATE OF SERVICE**

I certify that on this 14th day of July, 2021, the foregoing was filed and served through the Court's CM/ECF system upon all counsel of record.

                                           /s/ *Jeremiah J. Morgan*
                                           Jeremiah J. Morgan