UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |
|---|---|
| JESSICA HICKLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:16-CV-01357-NCC |
| ) | |
| ANNE PRECYTHE, JOAN ) | |
| REINKEMEYER, CINDY GRIFFITH, ) | |
| STAN PAYNE, SCOTT O'KELLY, L.P.C., ) | |
| LATOYA DUCKWORTH, and ) | |
| CORIZON, LLC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Jessica Hicklin's Motion to Enforce, or Alternatively, to Clarify, the Permanent Injunction (Doc. 205) and the MDOC Defendants'[1] interrelated Motion to Terminate Prospective Relief (Doc. 215). The motions are fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 57). For the following reasons, Plaintiff's Motion will be **DENIED** and the MDOC Defendants' Motion will be **DENIED, without prejudice, as moot**.

### I. Background

Plaintiff Jessica Hicklin ("Ms. Hicklin") brought this action for injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 against Defendants for their alleged deliberate indifference to Ms. Hicklin's serious medical needs. Ms. Hicklin is a transgender woman in the custody of the

---

[1] The MDOC Defendants are comprised of Defendants Anne Precythe, Joan Reinkemeyer, Latoya Duckworth, Scott O'Kelly, Ian Wallace, Deloise Williams, Cindy Griffith, and Stan Payne.

Missouri Department of Corrections ("MDOC") and housed at Potosi Correctional Center ("PCC"), a facility for male inmates, in Mineral Point, Missouri. Ms. Hicklin specifically alleged that despite knowing that Plaintiff has gender dysphoria, a serious medical condition that causes severe psychological suffering and can lead to physical injury when not properly treated, Defendants refused to provide her with medically necessary care. Although Defendants' mental health personnel evaluated Ms. Hicklin, have diagnosed her with gender dysphoria, and recommended that she receive hormone therapy to treat her gender dysphoria, Defendants refused to provide Plaintiff with this therapy, citing a policy or custom of providing hormone therapy only to those transgender inmates who were receiving it prior to incarceration (the so-called "freeze-frame" policy).[2] Defendants also deprived Ms. Hicklin of other interventions that are a part of the medically necessary treatment she requires for her gender dysphoria and have been recommended by Defendants' mental health personnel, including permanent hair removal and access to gender-affirming canteen items.

On April 4, 2017, Plaintiff filed a Motion for Preliminary Injunction (Doc. 63) requesting a preliminary injunction that (1) directs Defendants to provide Ms. Hicklin with care that her doctors deem to be medically necessary treatment for gender dysphoria, including but not limited to providing her hormone therapy, access to permanent body hair removal, and access to gender-affirming canteen items; and (2) enjoining Defendants from enforcing the policies, customs, or practices that have served as a moving force behind their constitutional violations by denying inmates with gender dysphoria individualized medically necessary treatment and care, contrary to widely accepted standards of care and the recommendations of Ms. Hicklin's treating mental

---

[2] Ms. Hicklin has been incarcerated in MDOC since the age of 16. *See* Doc. 16 at ¶64. Indeed, upon review of casenet and the MDOC, Ms. Hicklin was sentenced to life without the possibility of parole as a juvenile and is now moving pursuant to *Miller* and *Montgomery* to have a new sentencing hearing. *See Hicklin v. Blair*, No. 4:21-CV-00343-RK (W.D. Mo.).

health professionals (Doc. 64 at 5).  The parties were referred to Mediation on August 7, 2017 (Doc. 96) and, after extending the deadline for completion, the Court was informed that the parties had not reached a settlement on November 20, 2017 (Doc. 117).  The Court granted Plaintiff's Motion for Preliminary Injunction, in part, and denied it, in part, finding that the following injunctive relief was necessary:  Defendants are directed to provide Ms. Hicklin with care that her doctors deem to be medically necessary treatment for her gender dysphoria, including hormone therapy, access to permanent body hair removal, and access to "gender-affirming" canteen items (Doc. 145).

The parties subsequently came to an agreement regarding the permanent injunction in this action.  Plaintiff accordingly filed a Motion for Permanent Injunction (Doc. 163) and the MDOC Defendants did not object (Doc. 165).  The Court granted the Permanent Injunction as follows:

> (1) Defendants' failure to provide Ms. Hicklin medically necessary care related to her gender dysphoria violates the Eighth Amendment to the United States Constitution;
>
> (2) MDOC's policy, practice, custom, or usage of banning the provision of hormone therapy to any transgender inmate who was not receiving such therapy before entering MDOC ("the freeze-frame policy") violates the Eighth Amendment to the United States Constitution, both on its face and as applied to Ms. Hicklin;
>
> (3) For as long as Ms. Hicklin remains in the custody of MDOC, Defendants shall provide Ms. Hicklin with care that her doctors deem medically necessary treatment for her gender dysphoria, including hormone therapy, permanent hair removal, and access to gender-affirming canteen items;
>
> (4) Defendants are permanently enjoined from enforcing the freeze-frame policy; and
>
> (5) Defendants shall pay Ms. Hicklin's costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws.

(Doc. 176).  The case was closed that same date, May 22, 2018.  The Court addressed a post-judgment attorneys' fees motion from Plaintiff and the last action in the case was on March 27,

3

2019, when the Court awarded Plaintiff's counsel more than $300,000 in fees and costs (Doc. 187).

More than two years later, on May 4, 2021, counsel filed a Joint Request for Status Conference, requesting the Court hold a status conference with Plaintiff's counsel and the MDOC Defendants' counsel "to ascertain the Court's schedule for briefing this issue" (Doc. 190). At issue appears, specifically, item 3—"For as long as Ms. Hicklin remains in the custody of MDOC, Defendants shall provide Ms. Hicklin with care that her doctors deem medically necessary treatment for her gender dysphoria, including hormone therapy, permanent hair removal, and access to gender-affirming canteen items." The Court held a status conference with counsel on May 6, 2021.

After a status conference, the Court entered an Order on May 7, 2021, directing Plaintiff's counsel to provide the MDOC Defendants any necessary medical records and other information in their possession regarding the dispute on or before May 13, 2021, and to file a Motion to Clarify the Permanent Injunction on or before May 27, 2021 only addressing whether, if deemed medically necessary, a presurgical consult and subsequent gender confirmation surgery[3] would be covered by the scope of the Permanent Injunction issued in this case. Defendants were directed to respond to the Motion on or before June 10, 2021, with Plaintiff to file a reply brief on or before June 17, 2021. The parties timely filed their briefing and both sides requested oral argument. In response to Plaintiff's Motion to Clarify, the MDOC Defendants also moved for termination of prospective relief. The Court held oral argument on June 23, 2021.[4] During the oral argument, the Court struck the MDOC Defendants' Motion

---

[3] The parties do not dispute that the appropriate terminology for this surgery is not sex reassignment surgery but rather gender confirmation surgery (*See* Doc. 205 at 1; Doc. 206 at 1).

[4] Of note, the Corizon Defendants appeared by counsel during the oral argument but have

4

contained within their response with leave for the parties to file briefs on the issue within 21 days.  On July 14, 2021, the MDOC Defendants filed a Motion to Terminate Prospective Relief and their suggestions in support and Plaintiff timely filed her Opposition to the Termination of the Permanent Injunction.  In their Motion to Terminate Prospective Relief, the MDOC Defendants request oral argument (Doc. 215).  The Court finds additional oral argument unwarranted and will address the Motion on the briefing.

## II. Analysis

### A. Motion to Enforce, or Alternatively, to Clarify, the Permanent Injunction

A district court has "wide discretion" to clarify or modify the scope of an injunction it issued.  *Flavor Corp. of Am. v. Kemin Indus.*, Inc., 503 F.2d 729, 733 (8th Cir. 1974) (internal quotation omitted).  A modification "alters the legal relationship between the parties," whereas a clarification "does not change the parties' original relationship, but merely restates the relationship in new terms."  *Mikel v. Gourley*, 951 F.2d 166, 169 (8th Cir. 1991) (quotation omitted).  "Generally, a district court has the authority to modify its injunctive decrees where changed circumstances require modification so as to effectuate the purposes underlying the initial grant of relief."  *Richland/Wilkin Joint Powers Authority v. United States Army Corps of Engineers*, No. 13-2262, 2019 WL 1516934, at *3 (D. Minn. Apr. 8, 2019); *see also United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) (noting that it is "not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions.").  Here, the Court finds that clarification, not modification, is warranted.

"The scope of the injunction is discerned from the language of the injunction itself, as well as from the objective of the relief granted therein.  The parties are expected to comply with

---

not filed any briefing related to either the Motion to Clarify or the MDOC Defendants' subsequent Motion to Terminate Prospective Relief.

both the letter and the spirit of a court's order." *F.V. v. Jeppesen*, 466 F. Supp. 3d 1110, 1116 (D. Idaho 2020). *See also United States v. Armour & Co.*, 402 U.S. 673, 682 (1971) ("[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it."). An injunction should be examined as a whole, not in isolated parts. *Edmo v. Corizon*, 935 F.3d 757, 782 (9th Cir. 2019) ("When 'determining the appropriateness of the relief ordered,' appellate 'courts must do what they have always done': 'consider the order as a whole.'") (citation omitted).

The Court finds and clarifies that, although inartfully worded, the agreed terms of the Permanent Injunction do not encompass gender confirmation surgery or an associated pre-surgical consultation.[5] The Court concurs with Ms. Hicklin that the word "including" as used in section 3 of the Permanent Injunction indicates a non-exhaustive or illustrative list of items deemed to be medically necessary treatment of Ms. Hicklin's gender dysphoria. In fact, the Court rejected Ms. Hicklin's proposed language "including but not limited to" and modified the phrase to allow for some reasonable flexibility. However, in the context of the proceedings of this action and on the face of the injunction itself, the Court cannot find that the flexibility afforded in this term covers gender confirmation surgery or a pre-surgical consultation. Ms. Hicklin has consistently and exclusively requested relief as it relates to three specific items: hormone therapy, body hair removal, and gender-affirming canteen items. Ms. Hicklin's Amended Complaint and requests for Preliminary and Permanent Injunction sought redress for only these three categories (*See* Doc. 152 at 2-3). During the preliminary injunction hearing, Ms. Hicklin's counsel confirmed that there were only three categories at issue and that her request was "a package request of all three categories" (Doc. 83 at 13:8-25). Based on the record before

---

[5] The Court will not make any finding at this time as it relates to the necessity of the medical procedures themselves.

it, in the Preliminary Injunction Order the Court explicitly excluded any discussion of the constitutionality of gender confirmation surgery; "Plaintiff has not asked for surgery" (Doc. 145 at 24). The Eighth Circuit Court of Appeals has not directly addressed whether gender confirmation surgery would be constitutionally required in the prison setting, even if deemed medically necessary by her healthcare providers. *See Smith v. Rasmussen*, 249 F.3d 755 (8th Cir. 2001). The Court is aware of only one Circuit that has found the provision of gender confirmation surgery to be constitutionally required in this context. *Edmo*, 935 F.3d at 803, *cert. denied sub nom. Idaho Dep't of Correction v. Edmo*, 141 S. Ct. 610, 208 L. Ed. 2d 197 (2020) ("We hold that where, as here, the record shows that the medically necessary treatment for a prisoner's gender dysphoria is gender confirmation surgery, and responsible prison officials deny such treatment with full awareness of the prisoner's suffering, those officials violate the Eighth Amendment's prohibition on cruel and unusual punishment."). *Cf. Gibson v. Collier,* 920 F.3d 212, 215 (5th Cir.), *cert. denied,* 140 S. Ct. 653, 205 L. Ed. 2d 384 (2019); *Kosilek v. Spencer*, 774 F.3d 63, 96 (1st Cir. 2014) (both finding the state does not inflict cruel and unusual punishment by declining to provide gender confirmation surgery to a transgender inmate). Further, the Court only made specific factual findings both in the Preliminary Injunction and the Permanent Injunction as to the three specific categories of individual relief—hormone therapy, hair removal treatment, and gender-affirming canteen items—but not as to any additional relief as required under 28 U.S.C. § 3626(a)(1)(A). In fact, the Court could not have included any specific findings as to gender reassignment surgery as it relates to Ms. Hicklin at the time as Ms. Hicklin was only recently considered a candidate for the procedure (Doc. 205-1 at 5-6).

**B. Motion to Terminate Prospective Relief**

The Prison Litigation Reform Act ("PLRA") "establishes standards for the entry and termination of prospective relief in civil actions challenging conditions at prison facilities."

7

*Miller v. French*, 530 U.S. 327, 331 (2000). Under the PLRA, prospective relief "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff[.]" 28 U.S.C. § 3626(a)(1)(A). "The court shall not grant or approve any prospective relief unless the court finds that such relief in narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* "The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system cause by the relief." *Id.* The Court may terminate the prospective relief upon motion of any party at least two years after the date the court granted relief unless the court makes written findings on the record that the relief remains necessary to correct a current and ongoing violation of the federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation. 28 U.S.C. § 3626(b). Immediate termination is permitted if the prospective relief was approved or granted in the absence of a finding that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. 28 U.S.C. § 3626(b)(2).

Here, the MDOC Defendants seek termination of the Permanent Injunction because it has been two years since the Court granted the prospective relief therein and, alternatively, because the relief was granted in the absence of findings required by 18 U.S.C. § 3626. As correctly noted by Ms. Hicklin, under 18 U.S.C. § 3626, prospective relief shall not terminate if the Court makes written findings that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation, is narrowly drawn, and is the least intrusive means to correct the violation. Upon review of the briefing, however, the parties apparently contest whether there were sufficient factual findings at

the time or whether there are sufficient factual findings currently such that the phrase "care her doctors deem medically necessary treatment" is sufficiently narrowly tailored to include gender confirmation surgery and a presurgical consult (*See, e.g.,* Doc. 216 at 7-9). The MDOC Defendants represent that they will continue to provide the specified care of hormone therapy, permanent body hair removal, and access to gender-affirming canteen items after termination of the prospective relief but do not otherwise contest that these categories of items are sufficiently supported by the factual findings in the uncontested Permanent Injunction (Doc. 216 at 9). The MDOC Defendants also do not address the freeze frame policy[6] (*See* Doc. 216). The Court, having clarified that the Permanent Injunction does not include gender confirmation surgery or a pre-surgical consult and finding the MDOC Defendants do not seek additional relief, concludes that the MDOC Defendants' Motion for Termination of Prospective Relief is moot.

### III. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Jessica Hicklin's Motion to Enforce, or Alternatively, to Clarify, the Permanent Injunction (Doc. 205) is **DENIED**.

**IT IS FURTHER ORDERED** that the MDOC Defendants' Motion to Terminate Prospective Relief (Doc. 215) is **DENIED, without prejudice, as moot.**

Dated this 13th day of December, 2021.

      /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE

---

[6] The PLRA specifically defines prospective relief to include "all relief other than compensatory monetary damages." *Tyler v. Murphy*, 135 F.3d 594, 596 (8th Cir. 1998) (quoting 28 U.S.C. § 3626(g)(7)).